We'll hear argument next in Connecticut State Police Union v. Rovella, 23-530. Thank you. Mr. Dunn. You may want to lift those microphones up or lift the podium. Good morning, Your Honors, and may it please the Court. Paul A. K. Doss on behalf of the Plaintiff, the Connecticut State Police Union. Your Honors, if this case does not present a contract clause violation, then the contract clause would be a dead letter. But we know from this Court's published opinion yesterday in Melendez v. City of New York that the contract clause is alive and well. And Melendez refers to Justice Gorsuch's dissent in Spine v. Milan, where Justice Gorsuch made it very clear what the contract clause means. And the contract clause, in its simplest terms, says that people are guaranteed the right to be able to rely on the existence, on the law as it existed at the time in which their contracts were made. But a legitimate public interest can override, obviously, under the contract clause analysis. It's not an absolute right. You understand that? Yes, Your Honor. So let me just ask you, would you agree, let me see if I can sum up your position. You tell me if I'm getting it wrong. I think you would agree that transparency in the investigation of police misconduct, as well as accountability for misconduct, are both compelling state interests, public interests, state interests. I think you would agree with that, right? Yes. All right. Your issue is that you believe that false allegations of police misconduct don't serve that interest. Is that, am I summing up your position? No, Your Honor. I want to be very clear. Yes, that's one of the arguments, the most principal argument here is contract clause. We don't need to get into the underlying issue about whether or not it is good policy to disclose false anonymous complaints. No, you do need to get to that, because even if there's a substantial burden on a contract, which we'll assume is true, then the analysis turns to whether or not there is a legitimate public state interest that overrides that, right? Yes, but most importantly, these cases turn on the third question. So to your point, the first question is whether there's a substantial impairment of a contract. Collective bargain agreement, every court says when the state's a party to the contract, that's satisfied. The second deals with the public policy. Right. We can dispute that, that's fine. The third question, and that's what this turns on, and every state collective bargaining challenge turns on, is it reasonable and necessary, reasonable and essential, and that's the standard they can't satisfy. But isn't that, it's what puzzles me then, I mean, because we have these formulae in case law, but one of the things that in reality seems to be true is that both of those latter two questions are essentially questions of public policy, aren't they? No, they're not. Because if you're going to argue about whether this act, it's like the usual compelling state interest. It has to be a compelling interest, but it also has to be substantially related or necessary to accomplish that purpose, right? Yes, except here's the distinction. It has to be narrowly tailored, and really it's a strict scrutiny standard with respect to that third question.  I mean, most of the cases that we've had, it seems to me, are these budget cases where there's a fiscal crisis, and the focus is sort of on is the fiscal crisis being fixed on the backs of the police union, let's say, as opposed to all the other things that the government spends money on, and is everybody being asked to bear their fair share? But here, the compelling interest is about the police. There's not, you can't, you know, if you say, okay, this is all about white supremacy. There are lots of things the government could do to advance the cause of defeating racism in the state. But the issue here is about the police. So this seems to be a little harder to disaggregate. Can you help me out as to why this approach is not narrowly tailored to deal with the precise public policy problem that the legislature perceived as a crisis? Yeah, and the answer is let's just remove state police and use any- Excuse me, I'm sorry, a little louder or- Yeah, let's remove state police and use any state bargaining unit. The whole point is when you have a collective bargaining agreement, let's use- I'm sorry, again, I don't mean to interrupt, but it's just that the thing they're addressing has to do with a problem of perceived police unaccountability. I'm having difficulty understanding how that problem could be addressed by a statute that made other kinds of state agencies or state officers accountable. Yeah, and the answer is because we're talking about the contract clause violation. So here's what the courts have said. There's only one circumstance in which they found that it was essential to impair an existing contract. If this was prospective, no problem. But retroactively impairing a contract has only happened twice, Buffalo Teachers and Sullivan. Both of those were impossible for the state to comply with the contract because of the fiscal emergency. So the question is, is it impossible for the state to comply? Excuse me, it wasn't impossible. The counties and the cities could have paid their employees. They would just have had to cut welfare benefits or lay people off. They could have done a lot of things. But the way the legislature decided to do it and to share the costs was to make all of the employees, including the unionized ones with collective bargaining agreements, receive a little less than they had bargained for. And we upheld that. The answer to that is if there were other options, then you're into associate of surrogates and condo v. breast, and there would be a contract violation. I think you're misstating the test. I think unless there's self-interest on the part of the state for financial reason or some other reason, the test is not whether it's impossible. It's not even whether it's narrowly tailored. It's just whether it's reasonable. So I think you're setting the bar way too high under the applicable standard. So there was a dispute about that. That was resolved yesterday in Melendez. If you look at the majority opinion in Melendez and the dissenting opinion, they all agreed that it was a strict scrutiny test. It has to be essential. The language for Melendez is this. It has to, with necessity, it has to be the most penetrating constitutional review. All right. So I'm going back to Judge Lynch's question. How could they have done this differently? What could they have done differently if they want to increase, address police transparency in these investigations and accountability? What could they have done differently? What the Sixth Circuit did in Toledo area, they could have waited until the expiration of the contract to deal with the issue because it's the retroactive nullification of the contract, not perspective. And that's Justice Gorsuch's explanation in Breen that says. In dissent. Yes, it is dissent, but it was cited with approval in yesterday's decision. And it's a really important summary. We get to make dissents the law? It's a cited issue with respect to the principles. But anyway, my main question about Melendez is that's a case in which the state is impairing a contractual obligation between private citizens. Isn't there a different standard and a different approach when the legislature has bargained away its own power to make public policy on behalf of the citizens of the state? Yes, there is a difference. But here's the thing. That's just that's a subject of the dispute between the majority in dissent. Judge Carney said there's a difference if it's a public contract. It has to be the strict scrutiny standard. You shouldn't apply it to a private contract. Excuse me. We've said that when the public contract impairment is an exercise of naked self-interest and trying to get out from under an obligation because it'll be, you know, be richer as a result and acting like a private citizen and not acting in the general public interest. That's when the impairment of public contracts gets even stricter scrutiny than something else. But where the legislature is in the fiscal cases, which I grant you are also distinguishable because it seems to me fiscal cases are a different order of thing than what's happening here in various ways that cut both ways. But in those cases, what we've said is that when the legislature is acting not as a self-interested private party trying to enrich itself at the expense of the people that it contracted with, but is legitimately pursuing compelling public interests, that's different. Judge Loyer, may I answer the question? Of course. Thank you. The answer is so that's only half the explanation from Sullivan and Buffalo Teachers. Sullivan actually says it's not just fiscal self-dealing, it's a matter of political expediency that can't be used. And the case really on point is out of the Sixth Circuit Toledo because that is a case where you're not dealing with a fiscal crisis. You're not dealing with fiscal circumstances. So when you're not dealing with fiscal circumstances, you still have to – it really comes down to – and this is – if you put the test in, Buffalo Teachers and Sullivan, the question is can the state comply? I want to answer, for example, Buffalo Teachers. You said, well, don't they have other options? In that case, Buffalo Teachers exhausted other options. That was part of it. They did layoffs. They did hiring freezes. The waives freeze was the only last action. And Judge Calabresi said it was an act of last resort. This isn't an action of last resort. There is plenty of other options available to reach public policy. I asked you that. I just asked you that a few minutes ago. You acknowledged at the beginning of the argument these are compelling state interests, and I asked you how could they have accomplished those interests here differently, more narrowly? And you said to me they could have waited two years. So that's your answer to that? That's the only other option they have for these compelling interests is to wait two years? Yeah, so you have to look at a multiple of options. One of them is waiting two years. One of them is limiting which reports were going to go ahead and be released. There's all these other policy questions that could have been considered and weren't by the legislature. And once that didn't happen, they haven't chosen the most – What are the other policy alternatives? Pardon? So if you take the temporal solution out of the equation for a moment, what are the other policy alternatives? So one of the policy examples is there's different types of reports that are in play here, false allegations, unsubstantiated, things that are exonerated. If the legislature had perhaps considered a subset, I'm not saying that would survive constitutional scrutiny, but it would be evidence that they considered other policy concerns. Isn't a possible constitutional infirmity a good reason not to embrace a particular policy alternative? Absolutely. From this standpoint, I think I understand your question. You have to consider the violation of the contract clause at par with any breach of the agreement as an option. So they should have considered that and justified, yes, we need to. It's essential. We must break this contract now. And if you – that's the standard that this Court has set. And to be clear, if this Court affirms a decision below, this would contradict the Sixth Circuit's decision in Toledo area. It would contradict the Seventh Circuit's decision in Mitchell – in Elliott. And it would be an absolute circuit split because no other court, no other Federal Circuit court has ever determined that a non-financial fiscal emergency infringement on a contract has survived constitutional scrutiny. If it's a non-financial term, there's no reason that the parties can agree. Is this before us in the context of an injunction or a request for an injunction? Yes. As a practical matter, as of June of next year, because my understanding is it's also retroactive records. In other words, starting June of next year, it's not then such allegations will be disclosed. They're going to disclose all of them anyway, so – right? Or am I missing something? Possibly. Isn't that what's going to – Possibly. That obviously – Possibly. Once this collective bargaining agreement expires next June, the law says all of the records other than this invasion of privacy, you know, exemption, are going to get disclosed from the past. So to – exactly why we have a constitutional – a contract clause violation. This is Justice Gorsuch's point. Once they made it retroactive, they triggered the contract clause. If they had just made this prospective, everything gets released after 2022, we're probably here on different arguments. I'm sorry. Why – I'm missing something. I understand your point about if they do something now while the collective bargaining agreement is in place, they're impairing the obligations of contract. But the contract doesn't say that never in perpetuity will these documents be released, does it? That's correct. So then in June or whenever the contract expires, the legislature could do – retrospectively release all these records. Exactly why this is a contract clause violation. They can't impair the existing collective bargaining agreement. If they want to bar it from being subject to collective bargaining in the future, they want to release something in the future, that's not subject to the contract clause. The contract clause violation here is the retroactive impairment of the existing contract. That's what creates the constitutional problem here. And that's why they can't establish a censure. But I understand the retroactive point seems to be not doing any work because they couldn't prospectively impair the contract by saying starting tomorrow we're going to release only the records that are made tomorrow. It's during the pendency of the contract is your point. And then later, I think you'd agree, wouldn't you, that the legislature could enact a statute even today that says effective in June we're going to release all these records. If 20-1 sections 8 and 9 did not retroactively, explicitly retroactively invalidate the current collective bargaining agreement, we wouldn't be here on a contract clause. No, I'm sorry. Maybe we're just quibbling about the language. I don't understand what work the word retroactive does because if they prospectively impaired the contract, meaning tomorrow during the pendency of the contract, we're going to start releasing records. Not the ones even from yesterday, but any records that are made after tomorrow. You would still be making the same argument. It would be as good an argument then as it would be if they're releasing last year's records. As long as the existing collective bargaining agreement is in place and there's an impairment of the existing collective bargaining agreement. Yes, that's the point. If they want to change to the future, and that proves the point of why this isn't essential. And that's Toledo area. That's the Sixth Circuit's decision in Toledo area. If they want to go ahead and address the same concerns, if there's really a policy concern, they can do it prospectively without violating the Federal Constitution. And that's why this doesn't survive Constitution. So the entire injunction is for what you're asking us to do is to prevent Connecticut from releasing these records until the expiration of the contract? Correct. Okay. Now I'm a little confused. So you would not be standing here if all the legislature did was to say from today until the – for those records from today until the CBA expires. Those are subject to the law, but nothing prior to our passage of this law is subject to that law. Yes, with one nuance, Your Honor. Yes, and some in substance, because it's the retroactive nullification of collective bargaining agreement, and that's why I say it's dangerous to open this up and allow legislatures to disrupt existing contracts. If the law was only prospectively and it said you were not allowed to include a freedom of information restriction in your collective bargaining agreement going forward, meaning any contract in the place after 2022, we wouldn't be here on a contract clause claim. But this is a clear violation of the federal contract clause because it's specifically retroactively applied to an existing contract. And that's precisely what none of our cases permit unless there's a dire fiscal emergency that makes it impossible to comply like the wage freezes and Buffalo Teachers and Sullivan. But that's a narrow exception. And that exception doesn't apply here because it's not impossible for the state to comply with the existing collective bargaining agreement. Why don't we hear from your friend on the other side? You've reserved two minutes of rebuttal. Thank you. Good morning. May it please the court. Assistant Attorney General Michael Scold on behalf of the defendant. Your honors, plaintiff seeks extraordinary remedy of a preliminary injunction that would enjoin the defendant from complying with his mandatory duty under state law to disclose police disciplinary records under FOIA. The district court properly concluded that he failed to demonstrate the requisite likelihood of success on the merits and the court should affirm for two reasons. First, the district court properly held that the act does not substantially impair the contract for constitutional purposes because the records at issue are and have long been subject to disclosure under FOIA. And the existence and history of that comprehensive regulatory scheme eliminates any expectation that plaintiff's members might have had that the state could not impair the contract in the manner it did if the public interest required it. Second, even if there is a substantial impairment, the standard is not at all strict scrutiny. Counsel is entirely... So you're saying even under this agreement, these records were subject to disclosure under FOIA? No, up until 2018. For the entire history of FOIA for the 45 years from when it went into effect up until 2018, the records were subject to disclosure. They always had them until 2018. But again, even if there... I don't understand why, you know, if the union perceived a threat that there's going to be much more interest in these records and we really want to preserve them and they bargained for a change, why does the fact that the law used to be one way alert the membership that their bargain really doesn't matter because the state could always go back on it because they used to do it that way? So if they promise not to do it that way for the next two years or as long as the contract lasts, that's just not worth the paper it's printed on. Well, it's a recognition that as long as that remains the public policy of the state, the state will comply with that obligation in the contract. But if the public policy of the state becomes to break the contract, they can do it. Because again, at the level you're talking about, by saying this is not a substantial impairment, we don't even have to ask whether they're serving a compelling interest or anything else. They could just do it because they felt like it. Well, that's not entirely correct, Your Honor. Every law has to have a legitimate regulatory rational basis. Every law has. Yeah, and almost every law does because legislatures don't typically behave in crazy ways. But if they decide that it's probably a good idea, that we made a bad deal, we shouldn't adhere to that anymore because public policy points the other way. They can just break it because this was a new thing in this contract? Well, I don't think that there would be a legitimate state interest for the state to say, we made a bad deal and we would just want to get out of it. Why do they think it's a bad deal? They think it's a bad deal because it doesn't really serve the public interest. So they're going to change it. That's correct. And the state has the power to do that, Your Honor. The Supreme Court has been very clear that the state does not and cannot bargain away its power to regulate in the public interest. So therefore the contract clause doesn't really have any bite on the state impairing its own contracts so long as what? So long as the state has some plausible reason for changing its mind? No, Your Honor. This argument I'm making is very specific to the regulatory context. In the Buffalo teachers and the Sullivan and those types of cases where it's just a financial obligation, wages, payroll, whatever it might be, that's not a heavily regulated area. In heavily regulated areas like this that have been subject to regulation for decades, the state does not relinquish its power to regulate just by entering into a contract. And so, for example, in the energy industry, the state heavily regulates the energy industry, and it also is a consumer in that industry and pays and enters into contracts. It cannot be the law that just because the state enters into a contract as a consumer, it thereby cannot regulate the energy industry without meeting a heightened level of review. That's not the law, and it cannot be the law. But would those cases stand for the proposition if they just think they made a bad financial deal, unless there's a fiscal emergency, they can't get out of the contract? That's essentially what the case has said, right? Correct. Because wages and payroll are not heavily regulated. So in that realm, it does have bite, right? Absolutely, yes. Let me ask you about the strict – you were going to talk about why this strict scrutiny standard does not apply. Can you elaborate on that? Absolutely, Your Honor, especially when we're talking about a regulated area like this. It's for many of the same reasons. The case law says that once you get past a substantial impairment, the question is then – the first question that you have to get before you even get to a higher level of deference is whether the state is acting out of self-interest. And if it's not, then there is no heightened level of scrutiny at all. That's what Sullivan said. That's what Buffalo teachers said. Mr. Doss says Melinda has changed that. What's your response to that? Well, I apologize, Your Honor. I was not aware of that decision coming out yesterday. I would be happy to submit a supplemental briefing on it. But I don't think – I don't believe – That might be appropriate, actually, in this case. Okay, I would be happy to do that. So we'll issue an order to that effect this afternoon. Okay. But without getting into Melinda's, Your Honor, the Supreme Court has been very clear in decisions that are still clearly controlling U.S. trust company energy reserves that the state, when it is regulating and not acting out of self-interest, it is entitled to deference. So Melinda's could not have overruled those cases. Well, Mr. Doss says that self-interest includes political expediency. So if there are people out demonstrating in the streets and the legislature thinks that – the legislators think that their constituents want something and they better deliver, I guess I'm having a little trouble understanding what's the difference between making public policy and responding to the demands of the people. But it's politically expedient, he says. And our cases say that's also a kind of self-interest on the part of the legislature. How do you respond to that? Well, when you characterize political expediency that way, there is no difference. And that can't be how you characterize political expediency. When the Court talks about political expediency, it's talking about when there's a problem to be fixed, putting that burden on one set of individuals who don't have political power so you don't have to bother people who do. And that's like in the court wage cases. There was a constituency that the state could easily recover from. It was politically expedient to do that, and they did it that way, and that's not permissible. But it can't be that that means that the state can't regulate in public interest. And so getting back to the question of substantial impairment, again, the question is not did the parties agree to and negotiate this provision. That's true of every provision. The question is whether it's foreseeable. And the cases hold that in this area, the reason that there's no substantial impairment in this area is because the state does not bargain away its ability to regulate in the public interest. And therefore, the potential for future regulation is foreseeable. It's part of the contract. When you're operating in this area, parties to a contract know that the state can and might, if it has to, change the contract. And that's exactly what we have here, Your Honors. How do we assess this issue of whether there is some alternative that the legislature here considered? In other words, who bears the burden of showing that or showing that an alternative was not considered? Well, two responses. First of all, we don't even get to that question because there is no self-interest on the part of the state here. I understand. So it's simply rational basis. And the court would never have to look for alternatives. The alternatives that opposing counsel was discussing only kicks in once you're in the less deference group. And in that realm, this court hasn't decided whose burden it is. But the First Circuit, in the case we cite in our brief, goes through an extensive analysis putting that burden on the plaintiff, not on the defendant. And there are no other cases, other circuits, that have engaged in any sort of analysis of that issue, although this Toledo case, I believe, did put it on the defendant. He proposed that you could wait the two years, or I think he also said you could take exonerated out of the standard and just focus on the other categories. Do you want to respond to either of those things? Yeah. With both of them, Your Honor, the question of whether there's alternatives is whether there are alternatives that would achieve the state interest equally well. Waiting for two years would not achieve the state's interest at all. It would be allowing state police to shield their disciplinary records for two more years. That's not advancing the state's interest here. And the same is true with having a narrower case category of records that might be subject to disclosure. The state has determined that all of these categories are and should be subject to disclosure, just like they were for the last 40 years. Is my understanding of what's going to happen in June accurate under the law, that all of these records, including going back years, will all become publicly available under the law as of June? I believe that's accurate, Your Honor. Assuming that the contract were to remain in place, which I don't think it should, the part that's been impaired. Let me go back and just make sure I understand. The contract expires this coming June 2022? Correct. And the statute that was passed is not time limited, is it? It doesn't say that these records will be available starting now but ending in 2022? No, but the upshot is going to be that once this contract were to expire, then you cannot have a provision and all of these records, whether they're produced yesterday or today or tomorrow, will be subject to disclosure. So even if we were to grant the relief that the appellant is asking for, what they're getting is a moratorium until June? That's correct, Your Honor. And I question whether that raises a mootness question as to whether there's any real practical— for the rest of my life. There's certainly an interest that people have, whether it's a compelling, irreparable, whatever interest may be a different question, but people have an interest today in forestalling this. I suppose a cynic might say people aren't out in the streets anymore and maybe the police union can bring pressure on the legislature either through the collective bargaining process when they negotiate to renew their contract or just politically in the usual way by leaning on legislators and threatening to oppose them in the next election if they don't change this law. So as of now, we may predict that this law is going to go into effect one way or the other in June 2022, but the case certainly doesn't seem to be moot because they're looking for right now, and they'll worry about June and June. It may become moot in June if it hasn't been fully resolved by then, but it's not moot now. Well, whether it's technically moot or not, Your Honor, I think that the fact that these records that are currently not subject to disclosure—well, they are after the district courts adopted the law, but the fact that they would be in June of next year anyway— Are there any current pending requests for these records? Have news organizations or other individuals made requests that are pending for these records? It's not in the record, Your Honor, but my understanding is that, yes, there have been some made. I believe that one was responded to, and there's at least one more that's pending. But the district court's order is stay, right? So they're not going to be released—they weren't released yesterday because there's some kind of stay in place? I'm not aware of any stay, Your Honor. There's not a stay. So if these organizations have requested the records, why aren't the records given over? They have been given over, Your Honor. They have been given over. There's one set that has been released, my understanding, and my understanding there's another one that is in the process of being reviewed. So some part of the cat is out of the bag already. For that one request, certainly, Your Honor. And the plaintiff did seek a stay pending appeal from the district court and this court, which this court denied. And I would just—I know my time is up, but I would just add the court, in ruling on that motion for stay pending appeal, rejected it precisely because— Well, it's in front of us, so we— No, I understand, Your Honor. But I think that just highlights the weakness of the plaintiff's case. Anything further? Nothing, Your Honor. If you could respectfully ask that the court reaffirm the judgment. Thank you, Mr. Dodd. You've got a few minutes of rebuttal. Thank you, Your Honor. Judge Lynch, let me just really quickly talk about what's going to happen in 2022, what the issue is. It's not that the statute stays in place. If it's unconstitutional, this portion of the statute gets struck down. No, no. It's only—oh, no. Isn't it only unconstitutional to the extent that it impairs the obligation of contract? That's correct. So if it—if there's no contract that governs what happens in 2022, why is the statute—the relief is to say you can't enforce the statute while the collective bargaining agreement is in place. So two reasons. One, because the statute didn't negotiate a new collective bargaining agreement, so I'm assuming they'll get that done in 2022. It may not. Two, because this statute is retroactive, expressly retroactive, that's a contract clause violation. Now, the legislature could pass a new statute prospectively, and that would— I thought you told me that the legislature could pass a statute in 2022 that released all the records from ever. Yes, that's correct. I just wanted to be very clear that they would have to take that affirmative action. Why would they have to take another step? They've taken it. They've said these records are now matters of public record, and they're subject to the Freedom of Information Law. Because they did— Excuse me. You are saying they can't make them public during the pendency of this agreement. You're not saying they can't pass a statute that will take effect whenever the collective bargaining agreement expires. Correct. I agree with that. If they don't pass such a statute in July, you're going to argue that the current statute doesn't allow them to release these records. That's correct. Why is—I don't understand that. Why is that? Because a statute would be unconstitutional. No, why—statutes are unconstitutional sometimes as applied. And there's nothing on its face of this statute that says that you're arguing this can't be done by the legislature. You're only saying it can't be done while there's a collective bargaining agreement in which the State has pledged not to do it. No, Your Honor, what we're saying is the existing statute—and we're about for another time. May I answer, Your Honor? Of course. The existing statute, because it specifically and expressly addressed an existing contract, is constitutionally affirmed. If they pass a statute that prospectively bars collective bargaining to be addressing this issue, absolutely they can get the same disclosure that they're getting here. But isn't the statute—isn't it only that aspect of the statute that it says this agreement no longer is enforced? That's what's unconstitutional. So that issue we haven't addressed, but there's no separability provision, so we would be arguing that the statute itself is unconstitutional. So that's—the argument you're making today, because of the—where we are today is contract clause statute, you're going to make another argument after this contract expires? Only if a new statute—well, if they try to apply the old statute. If necessary. Yeah, if they apply the same statute. If they pass a new statute in 2022, I don't have that argument. With Judge Oloye's permission, let me just ask you about exonerated records, because you—and you brief focus on that a lot, and today you suggested they could take those out and be more narrow. Doesn't the public—doesn't the state have an interest in showing the public that they've investigated police misconduct? Thoroughly, you know, sufficiently investigated, and that the reason no action was taken was that they were exonerated. Isn't there a public interest in exonerated cases too? Yeah, and I want to be very clear. I don't necessarily agree with that. I'm just pointing out— Why? Why don't you agree with that? Yeah, no, if I could say, because all I'm using that is to demonstrate that other possibilities, other least restrictive means haven't been considered. I'm not saying that's appropriate. I'm just saying by failing to do that, it's clearly— But I'm suggesting to you if they want to—if the goal is transparency and accountability, that's part of it, is showing we got a lot of complaints, we investigated them, and they were false. And that's precisely why we don't look at the wisdom of what the legislature did. Those are public policy questions. We look at the contract clause. Is there a violation? If I could use a different hypothetical. Let's say that the assistant attorney general's union allows folks to work from home four days a week, telecommute. The public cries. This is crazy. We don't have faith in how hardworking our state workers are. And the legislature comes back in response to that public outcry and passes new statutes, and yeah, we're taking away that term in your collective bargaining agreement. That's violating the collective bargaining agreement. They can go forward and do it prospectively, but you can't exchange. You cannot impair a negotiated term by a collective bargaining agreement that the parties relied on, because that's what triggers the contract clause problem. You can do it prospectively, but you can't impair an existing contract. I guess I have one quick question to bring it back to Judge Bianco's question. So the issue about exonerated really isn't an alternative because you're saying that's just as unconstitutional. So how could the failure to consider something that you would object to just as much be a failure on the part of the legislature? It's only if there's something they can do that's different. And the answer is because by failing to consider anything and not picking something is a matter of least resort. Excuse me. How do you know that they didn't consider anything? You know that they did not pass a statute that exempted exonerated. And the answer is they haven't furnished anything else they've considered. And we proposed and we provided evidence of what was discussed below was the testimony from the executive director of the Connecticut State Police Union saying, we expressly negotiated for this term. You should not interfere with our existing contract. I understand that. But why, I mean, this sends us down a road that the courts have been very reluctant to go into, isn't it? That we'd have to subpoena people, subpoena legislatures and ask, you know, behind closed doors when the committee was marking this up or while this was being drafted, what were you thinking about? Were you thinking about this alternative and that alternative? And the legislator says, yeah, actually, I did consider that. And here's why I rejected that in proposing the bill. And then they'd be cross-examined. And the court would say, well, I guess that's a lie. And that's why courts should be reluctant to ever allow a legislative act to impair a constitutional, a contractual arrangement. And to your point, Judge Lynch, in Melendez, there are nine volumes of appendices dealing with the legislative record. So that is exactly what parties are asked to do when the legislature passes a statute that impairs an existing contractual relationship. What was it, was it your burden, by the way, since it's on a preliminary injunction to present this evidence? So the answer is, again, under Melendez, it's very clear now that we're dealing with strict scrutiny. In the context of a public contract, the burden is on the State to show, just like strict scrutiny, that's absolutely essential. So I think the members actually seems to have gone out of its way in the majority to distinguish between public and private contracts. Would you agree with that? I think that Judge Carney accused the majority of using the same standards for both and saying, but everyone agreed that under the public contracts, it was absolutely essential, strict scrutiny analysis. The highest level of scrutiny. So even in the context of a preliminary injunction, you're saying it was the State's burden to provide that information? Absolutely. But I come back to it. We're looking at this from a constant, the pure question, and this is the new Hope case, pure question whenever you have a constitutional claim like this is, is there a constitutional violation or not? Whether it's a preliminary injunction with a declaratory judgment ruling, the pure question is, is there a constitutional violation? And that burden on essential has to be on the government. But I will say, we've still provided alternatives. And the point is. So the two alternatives, of the two alternatives that you provided, one, we've already discussed exoneration, but the other is timing. How does that, just to pick up on something your friend here said, how does that serve the public interest equally well? The answer is. It's about today. So tomorrow is a little different from today. And that's what the Sixth Circuit expressly addressed in Toledo area. It said you may have a substantial public policy in regulating elections. But the fact is that the here and now, doing it right now, is not going to justify impairing an existing contract because of that contract clause violation. Am I right that the existing contract, if there's no new contract, no contractual agreement, is it the case that the existing contract will exist indefinitely? It will continue on until a new contract is agreed to, yes. So actually, we're not talking about two years. We're talking about maybe forever, as long as the parties can. The police union has a veto in collective bargaining. Now, of course, I suppose if they want to raise at some point, eventually they have to come to negotiate something. But there's no actual terminus ad quem of this contract. Which, exactly. Because I'm going to come back to the quote. Does that bear in some way on your argument that all they had to do was wait a little bit? No, because that's Toledo area. It's the same thing as any court. That doesn't bind us. I understand you've got a court that says something like that, and we will consider their views. So I understand that point. And to that point, the Seventh Circuit, the Sixth Circuit have said the exact same thing. We have no court, including this one, has said that you can impair a contractual term in the absence of a fiscal emergency. None. That's never been said. And that comes back to, I just want to close with what Justice Gorsuch said. People have an absolute right to be able to rely on the law as it is. Justice Gorsuch said that in dissent. The Sixth Circuit is something that doesn't bind us. Justice Gorsuch, in dissent, is something that doesn't bind us. It doesn't bind, but I think it's such an accurate statement with the contract clause. No, you want us to make it. You want us to say that's what the contract clause means. He thinks so. I take the point. Yes, Your Honor, and I think that people have a settled expectation under the contract clause that they get to, that the contract is honored under the laws that existed, and any change that occurs is under a very limited, exceptional circumstances that were not shown here, that were not present. And you do agree, I just want to make clear, that this is a public contract that we're talking about. That's right. Okay. And that's the reason why that there has been never, never a destruction of impairment affirmed of a collective bargaining agreement, except in two narrow circumstances, situations of dire fiscal circumstances where it was impossible to comply. Under no circumstances has a court in the country allowed the legislative impairment of an existing bargaining agreement. And the one circumstance you're alluding to is Sullivan, and that's where you say it was impossible to comply. Buffalo Teachers and Sullivan. I respectfully disagree with your assessment or your characterization of that part of Sullivan, but I appreciate the argument. We'll reserve decision.